CRAIG M. PETERS, NO. 184018
JEREMY CLOYD, NO. 239991
**ALTAIR LAW LLP**
465 California Street, 5th Floor
San Francisco, CA 94104
Phone: (415)988-9828
Email: cpeters@altairlaw.com; tguedikian@altairlaw.com
Email: jcloyd@altairlaw.com
(*Co-Counsel/Local Counsel*)

THERON HARDEE BASS, III (Admitted *Pro Hac Vice*)
JOHN SCAROLA (Admitted *Pro Hac Vice*)
FORREST GREGORY BARNHART (Admitted *Pro Hac Vice*)
**SEARCY DENNEY SCAROLA BARNHART & SHIPLEY P.A.**
2139 Palm Beach Lakes Blvd.
West Palm Beach, FL 33409
Phone: (561) 686-6300
Email: thb@searcylaw.com; thbteam@searcylaw.com
Email: jsx@searcylaw.com; mmccann@searcylaw.com; scarolateam@searcylaw.com
Email: fgb@searcylaw.com
(Admitted *Pro Hac Vice*)

ATTORNEYS FOR PLAINTIFF
JOHN DOE

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO-OAKLAND DIVISION

| | |
|---|---|
| JOHN DOE, Individually and on behalf of all others similarly situated<br><br>Plaintiffs,<br><br>v.<br><br>X CORP., (f/k/a Twitter, Inc., d/b/a X), and X.AI CORP., (d/b/a xAI)<br><br>Defendants. | CASE NO. 3:25-cv-07597-TLT<br><br>**DECLARATION OF JOHN DOE IN SUPPORT OF PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR (1) TEMPORARY RESTRAINING ORDER, WITHOUT NOTICE, (2) PRELIMINARY INJUNCTION AND ORDER TO SHOW CAUSE SETTING HEARING, AND (3) ORDER PERMITTING PLAINTIFF TO PROCEED UNDER PSEUDONYM**<br><br>Date: September 30, 2025<br>Time: 9:30 a.m.<br>Judge: Honorable Trina L. Thompson |

1

John Doe, Individually & on behalf of all others similarly situated vs. X CORP. and X.AI CORP.
Case No. 3:25-CV-07597-TLT
DECLARATION OF JOHN DOE

# DECLARATION OF JOHN DOE

I, John Doe, declare as follows:

1. I created an OnlyFans account.

2. OnlyFans is a subscription-based platform in which creators create content for subscribers, or fans, to view.

3. An OnlyFans "creator" is a person who has set up their account to post content for a fan to view.  A "fan" is a person who has registered for an account and who can access a creator's content. A "creator interaction" is an interaction that grants a fan access to a creator's content.

4. The OnlyFans terms of service is a legally binding agreement for and between OnlyFans users, and registration and use of OnlyFans includes an agreement to be bound by its terms of service.

5. As a creator, I agreed to the OnlyFans terms of service.

6. Creator interactions are governed by the contract between fan and creator, which is legally binding and applies each time a creator interaction is initiated on OnlyFans.

7. Content I created for my account included "intimate visual depictions," "sexually explicit conduct" and/or "commercial pornographic content" as defined by the NCII Statute, depicting myself.

8. The content I created for my OnlyFans account is my intellectual property.

2

John Doe, Individually & on behalf of all others similarly situated vs. X CORP. and X.AI CORP.
Case No. 3:25-CV-07597-TLT
DECLARATION OF JOHN DOE

9. Copying, or ripping, content from a content creator violates the OnlyFans acceptable use policy and terms of service.

10. Intimate visual depictions, sexually explicit conduct, and/or commercial pornography, as defined in the NCII statute, of me were "ripped" from my OnlyFans account without my consent in violation of the OnlyFans terms of service.

11. I created intimate visual depictions, sexually explicit conduct, and/or commercial pornography in reliance that a fan would comply with the OnlyFans acceptable use policy and terms of service.

12. I consented to the creation of my intimate visual depictions that I created for OnlyFans but did not consent to the production of my NCII derived from my consensual intimate visual depictions by virtue of misrepresentation or fraud nor the distribution or further disclosure of my NCII beyond OnlyFans creator interaction(s).

13. The Ripper misrepresented their willingness to comply with the acceptable use policy and terms of service to gain access to my intimate visual depictions and then in violation of those agreements ripped those intimate images and produced NCII by misrepresentation from them and /or the Ripper fraudulently gained access to my intimate visual depictions and then in violation of those agreements ripped those intimate images and fraudulently produced NCII from them.

3

John Doe, Individually & on behalf of all others similarly situated vs. X CORP. and X.AI CORP.
Case No. 3:25-CV-07597-TLT
DECLARATION OF JOHN DOE

14. Consequently, the NCII that was ripped from my OnlyFans account was produced by fraud and/or misrepresentation.

15. I am also depicted in "Studio Pornography" which is commercial pornography that was produced by a studio – in this case by Falcon Studios, SayUncle, Pride Studios, and ASG Max.

16. Each of the named studios granted viewers of its commercial pornography a limited license to view my intimate visual depictions in reliance that the viewer would comply with the studio's terms of service which forbid ripping and disclosure of the intimate visual depictions over a platform or website.

17. The Ripper misrepresented their willingness to comply with the studio's terms of service to gain access to my intimate visual depictions and subsequently, in violation of those agreements, ripped those images and produced NCII by misrepresentation from them and/or the Ripper fraudulently gained access to my intimate visual depictions and subsequently, in violation of those agreements, ripped those images and fraudulently produced NCII from them.

18. Consequently, the NCII that was ripped from studios' websites was produced by fraud and/or misrepresentation.

19. My NCII was ultimately posted to Twitter, and subsequently X, and then disclosed, as defined by the NCII Statute, by X to its users.

4

John Doe, Individually & on behalf of all others similarly situated vs. X CORP. and X.AI CORP.
Case No. 3:25-CV-07597-TLT
DECLARATION OF JOHN DOE

20. The Ripper's inserting of my NCII on Twitter, and subsequently X, (which is a computer site or service) was a production by misrepresentation because the Ripper misrepresented that they would comply with the terms of service of the studio site and/or the terms of service and acceptable use policy of OnlyFans which prohibits that production and/or the Ripper's inserting of my NCII on Twitter, and subsequently X, (which is a computer site or service) was a production by fraud because the Ripper fraudulently entered into an agreement that they would comply with the terms of service of the studio site and/or the terms of service and acceptable use policy of OnlyFans which prohibits that production.

21. The disclosures of my NCII by X to its users was in or affecting interstate or foreign commerce or used means or facility of interstate or foreign commerce.

22. I did not consent to the disclosure of my NCII by X.

23. Twitter, and subsequently X, did not obtain my consent to disclose my intimate images on its platform.

24. I reported NCII to X.

25. Twitter, and subsequently X knew that I did not consent to disclosure of my intimate images on X.

26. Twitter, and subsequently X, disclosed my NCII in a manner that recklessly disregards whether I have not consented.

5

John Doe, Individually & on behalf of all others similarly situated vs. X CORP. and X.AI CORP.
Case No. 3:25-CV-07597-TLT
DECLARATION OF JOHN DOE

27. Upon information and belief, in order to store the massive amounts of data it has received, and is receiving, xAI discloses and/or transfers data, as defined in the NCII Statute, which includes my NCII that was disclosed from X, to the cloud-based services it uses as well as its own data centers.

28. These transfers of NCII by xAI across its systems are disclosures, as defined in the NCII Statute.

29. The disclosures of my NCII by xAI was in or affecting interstate or foreign commerce or used means or facility of interstate or foreign commerce.

30. I did not consent to the disclosure of my NCII by xAI.

31. xAI did not obtain my consent to disclose my intimate images on its platform.

32. xAI knew that I did not consent to the disclosure of my NCII or recklessly disregarded whether I consented to such disclosure(s).

33. xAI disclosed my intimate images, in or affecting interstate or foreign commerce or using any means or facility of interstate or foreign commerce, without my consent, knowing that I did not consent to such disclosures or in reckless disregard whether I consented to such disclosures, in violation of the NCII statute.

34. Creator interactions are governed by the contract between fan and creator, which is legally binding and applies each time a creator interaction is

6

John Doe, Individually & on behalf of all others similarly situated vs. X CORP. and X.AI CORP.
Case No. 3:25-CV-07597-TLT
DECLARATION OF JOHN DOE

initiated on OnlyFans. This was Exhibit 9 to the Memorandum of Points and Authorities in Support of the Motion for Injunction.

35. Copying content from a content creator violates the OnlyFans acceptable use policy and terms of service. This was Exhibit 8 to the Memorandum of Points and Authorities in Support of the Motion for Injunction.

36. Falcon Studios, SayUncle, Pride Studios, and ASG Max. Each of the named studios granted viewers of its commercial pornography a limited license to view John Doe's intimate visual depictions in reliance that the viewer would comply with the studio's terms of service which forbid ripping and disclosing of the intimate visual depictions over a platform or website. These were Exhibits 10-12 to the Memorandum of Points and Authorities in Support of the Motion for Injunction.

37. As evidenced by X's Privacy Policies and public statements made by Musk, xAI was trained on the content of X. The X privacy policies and help center references to Grok indicating this are attached as Exhibit 1 to the Reply to Defendants' Opposition.

38. During this process, xAI used, and is continually using, the publicly available data that X has and is disclosing as its data source.

39. On September 14th, 2025, at 6:06 a.m. EST, the following information regarding my NCII on X was provided to the defense:

7

John Doe, Individually & on behalf of all others similarly situated vs. X CORP. and X.AI CORP.
Case No. 3:25-CV-07597-TLT
DECLARATION OF JOHN DOE

- a listing of links (35 links in total) that lead to posts on X that were disclosing my NCII;

- identification of 4 profiles that were actively impersonating me and disclosing my NCII on X; and

- identification of 1 profile that was impersonating me and disclosing my NCII, but that had already been taken down.

40. On September 18th, 2025, I proceeded to click the links that had been disclosing my NCII on X and that had been provided to defendants. I clicked on each link. Some of the links led to a display that stated 'This Post is from a suspended account. Learn more' and did not show any NCII content or any content. As of 12:51 pm PST, 24 of the links displayed and disclosed my NCII on X.

41. In terms of harms to victims of NCII disclosure, even X itself acknowledges that the sharing of NCII can lead to significant physical, emotional and financial hardship for those affected. The X Global Transparency Report H2 2024 is Exhibit 2 to the Memorandum of Points and Authorities in Support of the Motion for Injunction.

8

John Doe, Individually & on behalf of all others similarly situated vs. X CORP. and X.AI CORP.
Case No. 3:25-CV-07597-TLT
DECLARATION OF JOHN DOE

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: September 18, 2025

By: ___*John Doe*___
      John Doe

6

John Doe, Individually & on behalf of all others similarly situated vs. X CORP. and X.AI CORP.
Case No. 3:25-CV-07597-TLT
DECLARATION OF JOHN DOE