**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Derek L. Shaffer (Bar No. 212746)
derekshaffer@quinnemanuel.com
1300 I Street NW
Washington, D.C. 20005
Telephone: (202) 538 8000
Facsimile: (213) 538 8100

Shon Morgan (Bar No. 187736)
shonmorgan@quinnemanuel.com
Dylan C. Bonfigli (Bar No. 317185)
dylanbonfigli@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443 3000
Facsimile: (213) 443 3100

Attorneys for Defendants X Corp. and xAI Corp.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JOHN DOE,<br><br>Plaintiff,<br><br>v.<br><br>X CORP. et al.,<br><br>Defendants. | Case No. 3:25-cv-07597-TLT<br><br>**NOTICE OF MOTION AND MOTION OF DEFENDANTS X CORP. AND xAI CORP. TO TRANSFER CASE TO THE NORTHERN DISTRICT OF TEXAS**<br><br>*Filed concurrently with Declaration of Megan Scolari and [Proposed] Order*<br><br>Date: November 4, 2025<br>Time: 2:00 p.m.<br>Judge: Honorable Trina L. Thompson |

# NOTICE OF MOTION

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on November 4, 2025, at 2:00 p.m., or as soon thereafter as the matter may be heard in Courtroom 9 of the above-entitled Court, located at San Francisco Courthouse, 19 Floor 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants X Corp. and xAI Corp. (collectively, "Defendants") will and hereby does move the Court for an order transferring this case to the U.S. District Court for the Northern District of Texas pursuant to 28 U.S.C. § 1404(a).

This motion is made on the primary grounds that the X Terms of Service ("X TOS"), to which Plaintiff John Doe agreed, required that he file this case exclusively in the U.S. District Court for the Northern District of Texas or state courts located in Tarrant County, Texas. Scolari Dec. Ex. A ("X TOS") § 6. Alternatively, the same transfer should follow from this Court's application of the traditional factors, which together point to Texas as the appropriate venue for this case.

This motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the accompanying Declaration of Megan Scolari, the pleadings and records on file in this action, and such further argument and evidence as may be presented at the hearing of this motion.

Defendants certify that they have met and conferred in good faith with Plaintiff regarding the issues raised in this motion and that the parties were unable to resolve them without Court intervention.

Dated: September 25, 2025

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: */s/ Derek L. Shaffer*
Derek L. Shaffer
Shon Morgan
Dylan C. Bonfigli

*Attorneys for Defendants X Corp. and xAI Corp.*

# TABLE OF CONTENTS

**Page**


NOTICE OF MOTION .......... I

INTRODUCTION .......... 1

BACKGROUND .......... 2

A. Plaintiff Agreed To X's Terms of Service .......... 2

B. Plaintiff's Factual Allegations .......... 4

ARGUMENT .......... 5

I. THE COURT SHOULD ENFORCE THE PARTIES' TEXAS FORUM SELECTION .......... 5

II. THE SECTION 1404(**A**) FACTORS ALSO FAVOR TRANSFER TO TEXAS .......... 7

III. THE COURT SHOULD DEFER RULING ON PLAINTIFF'S REQUEST FOR INJUNCTIVE RELIEF .......... 8

CONCLUSION .......... 9

# TABLE OF AUTHORITIES

**Page**

## Cases

*Atl. Marine Constr. Co. v. U.S. Dist. Court*, 571 U.S. 49 (2013) ........ *passim*

*Baldwin Hardware Corp. v. Harden Indus., Inc.*, 663 F. Supp. 82 (S.D.N.Y. 1987) ........ 8

*Brittain v. Twitter, Inc.*, 2019 WL 110967 (D. Ariz. 2019) ........ 6

*Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991) ........ 5

*Dohrmann v. Intuit, Inc.*, 823 F. App'x 482 (9th Cir. 2020) ........ 6

*Doshier v. Twitter, Inc.*, 417 F. Supp. 3d 1171 (E.D. Ark. 2019) ........ 6

*Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829 (S.D.N.Y. 2012) ........ 6

*In re Horseshoe Entm't*, 337 F.3d 429 (5th Cir. 2003) ........ 8

*Space Expl. Techs., Corp. v. Nat'l Lab. Rels. Bd.*, 129 F.4th 906 (5th Cir. 2025) ........ 8

*Trump v. Twitter, Inc.*, 2021 WL 8202673 (S.D. Fla. Oct. 26, 2021) ........ 6

*Ward v. TheLadders.com, Inc.*, 3 F. Supp. 3d 151 (S.D.N.Y. 2014) ........ 6

*Yuksel v. Twitter Inc.*, 2022 WL 4443813 (D. Ariz. 2022) ........ 6

## Statutes

15 U.S.C. § 6851(b)(3)(A)(i) ........ 4, 5

15 U.S.C. § 6851(b)(3)(A)(ii) ........ 5

28 U.S.C. § 1404(a) ........ *passim*

**INTRODUCTION**

This case does not belong in the Northern District of California. Plaintiff first filed in Florida state court seeking ex parte injunctive relief there; after that court denied the request, he voluntarily dismissed and refiled here. ECF No. 1. Plaintiff again sought ex parte injunctive relief (ECF No. 7), and this Court denied that application, too, finding Plaintiff failed to meet the standards for such extraordinary relief. ECF No. 12 at 1.

Before further revisiting Plaintiff's unwarranted request for interim relief, the Court should transfer this case to the Northern District of Texas, so Plaintiff's request for injunctive relief can be resolved in the proper forum. Plaintiff agreed to X's Terms of Service ("X TOS") (Scolari Dec. ¶ 15), which require that all disputes be brought in Texas: "All disputes related to these Terms or the Services, including without limitation disputes related to or arising from other users' and third parties' use of the Services and any Content made available by other users and third parties on the Services, will be brought exclusively in the U.S. District Court for the Northern District of Texas or state courts located in Tarrant County, Texas, United States" (X TOS § 6 (Scolari Dec. Ex. A)). The Supreme Court has held that such clauses are presumptively valid and must be enforced absent extraordinary circumstances. *See, e.g.*, *Atl. Marine Constr. Co. v. U.S. Dist. Court*, 571 U.S. 49, 63 (2013). No such extraordinary circumstances exist here. Plaintiff's claims—that third parties copied and reposted his content on X—are subject to the agreed forum selection because they constitute the type of "disputes related to … other users' and third parties' use of [X's] Services and … Content made available by other users." X TOS § 6 (Scolari Dec. Ex. A). The Court should honor the parties' agreement by transferring this case to the Northern District of Texas.

Moreover, even if the forum-selection clause did not control, the discretionary factors under 28 U.S.C. § 1404(a)—the convenience of parties and witnesses and the interests of justice—strongly favor transfer to Texas given that X is headquartered there, Plaintiff does not reside in California, and the Northern District of Texas has a significantly lighter caseload than this Court. All told, there is no compelling reason for this case to remain in California.

## BACKGROUND

### A. Plaintiff Agreed To X's Terms of Service

Plaintiff maintains an X account and has accessed it at least as recently as September 22, 2025. Scolari Dec. ¶ 15. In using X, Plaintiff agreed to the X TOS (*id.*), which provide: "By using the Services you agree to be bound by these Terms" (X TOS at 4 (Scolari Dec. Ex. A)). Additionally, when individuals such as Plaintiff access X, they are presented with a screen that informs them that, "[B]y signing up, you agree to the Terms of Service and Privacy Policy, including Cookie Use," as shown below:




Scolari Dec. ¶ 7.

The current version of the X TOS (version 20) was published on October 16, 2024, and went into effect on November 15, 2024. *Id.* ¶ 13. During that one-month period, X displayed a banner across the top and middle of the x.com/tos pages, distinguishing the newly published X TOS (version 20) from the then-current version of the X TOS (version 19). *Id.* Several media outlets also covered X's update to the X TOS. *Id.*[1] And the current X TOS and prior versions,

---

[1] *See, e.g.*, https://www.cnbc.com/2024/11/22/why-x-new-terms-of-service-driving-some-users-

including version 19, state that X may revise the X TOS and that "[b]y continuing to access or use the Services after those revisions become effective, you agree to be bound by the revised Terms." Scolari Dec. ¶¶ 10, 14; X TOS, version 19 § 6 (Scolari Dec. Ex. B).

The current version of the X TOS explain that "These Terms of Service … govern your and other users' access to and use of our services, including various websites, SMS, APIs, email notifications, applications, buttons, widgets, ads, commerce services, and our other covered services … that link to these Terms (collectively, the 'Services'), and any information, text, links, graphics, photos, audio, videos, or other materials or arrangements of materials uploaded, downloaded or appearing on the Services (collectively referred to as 'Content')." X TOS at 3 (Scolari Dec. Ex. A). And the X TOS state that they "are an agreement between you and X Corp., which provides X and the Services, with its registered office at 865 FM 1209, Building 2, Bastrop, TX 78602 U.S.A." *Id.* at 4.

The X TOS designate Texas as the exclusive forum for disputes: "All disputes related to these Terms or the Services, including without limitation disputes related to or arising from other users' and third parties' use of the Services and any Content made available by other users and third parties on the Services, will be brought exclusively in the U.S. District Court for the Northern District of Texas or state courts located in Tarrant County, Texas, United States, and you consent to personal jurisdiction in those forums and waive any objection as to inconvenient forum." *Id.* § 6.

The X TOS also contain a Texas choice-of-law clause that provides: "The laws of the State of Texas, excluding its choice of law provisions, will govern these Terms and any dispute that arises between you and us, notwithstanding any other agreement between you and us to the contrary." *Id.*

---

to-leave-elon-musk-platform.html; https://mashable.com/article/twitter-x-terms-service; https://www.cnn.com/2024/10/21/tech/x-twitter-terms-of-service; https://techcrunch.com/2024/10/17/elon-musks-x-is-changing-its-privacy-policy-to-allow-third-parties-to-train-ai-on-your-posts/; https://www.socialmediatoday.com/news/x-formerly-twitter-updates-terms-service/730223/.

### B. Plaintiff's Factual Allegations

Plaintiff, a Nevada resident, alleges he is a content creator on OnlyFans. Compl. ¶¶ 4, 33-37. He further alleges that content he created for his OnlyFans account constitutes "intimate visual depictions," "sexually explicit conduct," and/or "commercial pornographic content," as defined by the NCII Statute. Compl. ¶ 40.

Plaintiff alleges that content depicting him was copied without his consent from his OnlyFans account in violation of OnlyFans's terms of service. Compl. ¶ 48. Plaintiff contends that the person who copied the images off his OnlyFans account "misrepresented [his or her] willingness to comply with the acceptable use policy and terms of service" and thus "fraudulently gained access to [his] intimate visual depictions." *Id.*

Plaintiff alleges that he stars in "Studio Pornography"—commercial pornography produced by studios, in this case, Falcon Studios, SayUncle, Pride Studios, and ASG Max. Compl. ¶ 50. According to Plaintiff, images of him were also copied "from studios' websites." Compl. ¶ 53.

As alleged, the images were "ultimately posted to Twitter, and subsequently X, and then disclosed, as defined by the NCII Statute, by X to its users." Compl. ¶ 56. According to Plaintiff, he "did not consent to the disclosure of his NCII by X." Compl. ¶ 59. And "Twitter, and subsequently X, did not obtain [his] consent to disclose his intimate images on its platform." Compl. ¶ 60. Plaintiff further alleges that he "has reported NCII to X" and that "X knew that … Doe did not consent to disclosure of his intimate images on X." Compl. ¶¶ 61-62.

As to xAI, Plaintiff alleges it is an artificial intelligence model trained by "feeding it data and content," such that it "requires data sources." Compl. ¶ 82. Plaintiff further alleges that "xAI was trained on the content of X," and he from there speculates "X disclosed … nonconsensual intimate images, including [his], to xAI." Compl. ¶¶ 83, 86. And Plaintiff alleges he "did not consent to the disclosure of his NCII to xAI by X." Compl. ¶ 88.

Plaintiff brings claims on his own behalf and also seeks to represent a class. Compl. ¶ 113. Plaintiff asserts two claims for relief: a claim for violation of the NCII Statute by X (Compl. ¶¶ 124-29) (Count I), and a claim for violation of the NCII Statute by xAI (Compl. ¶¶ 130-35) (Count II). In connection with both claims, Plaintiff seeks: actual and statutory damages under 15

U.S.C. § 6851(b)(3)(A)(i) (authorizing "actual damages sustained by the individual or liquidated damages in the amount of $150,000"); an injunction under 15 U.S.C. § 6851(b)(3)(A)(ii); and an award of attorneys' fees and costs under 15 U.S.C. § 6851(b)(3)(A)(i).

## ARGUMENT

As discussed below, the Court should enforce the Texas forum-selection clause to which the parties agreed and, even setting aside that agreement, should transfer to Texas based on the discretionary factors that would apply (absent agreed specification of the correct forum).

### I. THE COURT SHOULD ENFORCE THE PARTIES' TEXAS FORUM SELECTION

Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought ***or to any district or division to which all parties have consented***." 28 U.S.C. § 1404(a) (emphasis added). Ordinarily, courts weigh multiple factors. But where a valid forum selection clause exists, "[t]he calculus changes." *Atl. Marine,* 571 U.S. at 63. Three consequences follow:

1. The plaintiff's choice of forum "merits no weight." *Id.* "Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.*

2. Courts do not consider private-interest arguments; the parties have waived them. *Id.* at 64. "When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Id.*

3. Only public-interest factors remain, and those rarely override the parties' agreement. *Id.* (reasoning that "because [public interests] will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases"); *see also Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593–95 (1991) (upholding clause requiring litigation in Florida printed on cruise tickets).

Thus, "[i]n all but the most unusual cases," the clause controls. *Atl. Marine,* 571 U.S. at 60. Against this backdrop, courts routinely enforce forum-selection clauses in online terms of

service when the user had actual or constructive notice and assented. *See, e.g.*, *Dohrmann v. Intuit, Inc.*, 823 F. App'x 482, 484 (9th Cir. 2020) (user agreed to website's terms of use where there was "sufficient notice to a reasonably prudent internet user of its Terms of Use" based on conspicuous "warning language and a hyperlink to the Terms of Use"). And courts in social-media cases have consistently applied *Atlantic Marine* to transfer cases to the contractually chosen forum.[2]

Here, Plaintiff has used X, including after filing suit, and has thereby agreed to the current version of the X TOS, including the forum-selection clause. Scolari Dec. ¶ 15; *see, e.g.*, *Ward v. TheLadders.com, Inc.*, 3 F. Supp. 3d 151, 159 (S.D.N.Y. 2014) (user was bound by updated terms of service when original contract explicitly allowed for subsequent modifications and user continued to use the website after the updated terms went into effect). There is also substantial evidence showing that Plaintiff had notice of the current version of the X TOS. *See* Scolari Dec. ¶ 13. And Plaintiff's claims—that third parties posted content on X depicting him without his consent—fall directly within the clause's scope, which covers "disputes related to or arising from other users' … use of the Services and any Content made available by other users … on the Services." X TOS § 6 (Scolari Dec. Ex. A) (emphasis added). That is precisely the conduct Plaintiff challenges here. *See, e.g.*, Compl. ¶ 56. The forum selection clause thus controls.

Plaintiff cannot show any extraordinary circumstances that would justify ignoring the clause. The relevant public-interest factors—judicial efficiency, uniform application of the law, and respect for contractual commitments—all favor transfer, as discussed in more detail below.[3] And Plaintiff's serial filings in courts across the U.S., from Palm Beach to San Francisco, show

---

[2] *See, e.g.*, *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 838–41 (S.D.N.Y. 2012) (granting transfer to N.D. Cal. under Facebook's ToS clause); *Yuksel v. Twitter Inc.*, 2022 WL 4443813, at *3–5 (D. Ariz. 2022) (transferring case to N.D. Cal. under Twitter's ToS clause); *Brittain v. Twitter, Inc.*, 2019 WL 110967, at *1–3 (D. Ariz. 2019) (same, enforcing Twitter's ToS form-selection clause); *Doshier v. Twitter, Inc.*, 417 F. Supp. 3d 1171, 1178–81 (E.D. Ark. 2019) (same); *Trump v. Twitter, Inc.*, 2021 WL 8202673, at *3 (S.D. Fla. Oct. 26, 2021) (same, ruling that Twitter's forum-selection clause valid and mandatory).

[3] In addition, many putative class members likewise agreed to the X TOS, such that they, too, are required to pursue their claims in Texas.

that litigating in Texas would not be unduly burdensome for him. Nothing about this case is so unusual as to override the Supreme Court's clear directive generally calling for enforcement of forum-selection clauses. *Atl. Marine,* 571 U.S. at 64.

## II. THE SECTION 1404(a) FACTORS ALSO FAVOR TRANSFER TO TEXAS

Even apart from the binding forum-selection clause, transfer to the Northern District of Texas follows from straightforward application of the discretionary framework of 28 U.S.C. § 1404(a). That statute directs courts to consider the convenience of the parties and witnesses as well as the interests of justice. "Factors relating to the parties' private interests include 'relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Atl. Marine*, 571 U.S. at 63 n.6. "Public-interest factors may include 'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law.'" *Id*.

Here, private-interest factors favor transfer to Texas. As Plaintiff concedes, "X Corp.'s principal business address is in Bastrop, Texas." Compl. ¶ 5.[4] Nor would transferring the case to Texas impose a burden on Plaintiff, who resides in Nevada. Compl. ¶ 4. Moreover, Plaintiff demonstrably has means to litigate outside his (currently) chosen forum. Plaintiff originally filed in Palm Beach, Florida (ECF No. 16-1), and voluntarily dismissed that case only after the Florida court denied his application for a temporary restraining order (ECF Nos. 16-2, 16-3).[5]

---

[4] On September 13, 2024, X closed the office that had previously served as its headquarters, located at 1355 Market Street, Suite 900, in San Francisco, California. Scolari Dec. ¶ 19. All X employees who previously worked out of that office (other than a small number of building security personnel and other non-executive functions) have transferred to other locations or are working remotely. *Id.*

[5] Although xAI's principal place of business is in California, as Plaintiff alleges (Compl. ¶ 6), Plaintiff's claims focus on X and his allegations that third parties uploaded content depicting him to X without his consent. Plaintiff's primary allegation as to xAI is simply that "X disclosed" the content depicting Plaintiff to xAI. Compl. ¶ 86. Thus, xAI's connection to California does not weigh against transfer.

The public-interest factors also favor transfer to Texas. As of June 25, 2025, there were 1,034 pending actions per judgeship in this Court.[6] In contrast, there are only 552 pending actions per judgeship in the Northern District of Texas.[7] The lighter caseload in the Northern District of Texas also translates to a dramatically shorter median time from filing to disposition in that court for civil cases, 5.8 months, as compared to the same statistic for this Court, 20.5 months.[8] And the median time from filing to trial for civil cases in the Northern District of Texas is 24.4 months, as compared to 37.6 months for this Court.[9] Accordingly, the public-interest factors, particularly "administrative difficulties flowing from court congestion," favor transfer to Texas.

## III. THE COURT SHOULD DEFER RULING ON PLAINTIFF'S REQUEST FOR INJUNCTIVE RELIEF

The threshold question in this case is not whether Plaintiff can meet the demanding standards for preliminary injunctive relief but whether this Court is the proper forum to adjudicate his claims at all. Federal courts routinely defer or deny without prejudice requests for interim relief where a motion to transfer venue under § 1404(a) is pending. This approach accords with basic principles of judicial economy and comity. Indeed, the "disposition of [a transfer motion] should [take] a top priority" in the handling of a case. *In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir. 2003). "It makes little sense for one court to devote substantial resources to deciding preliminary relief when another court may soon assume responsibility for the case." *Id.*; *see also Space Expl. Techs., Corp. v. Nat'l Lab. Rels. Bd.*, 129 F.4th 906, 911 (5th Cir. 2025) (district court was not required to resolve "preliminary injunction issue before transferring the case"); *Baldwin Hardware Corp. v. Harden Indus., Inc.*, 663 F. Supp. 82, 86 (S.D.N.Y. 1987) (declining to reach merits of motion for preliminary injunction because it was "preferable for the transferee court, before whom the action will be ultimately determined, to [decide the motion]'").

Such logic is especially compelling here. Plaintiff seeks sweeping injunctive relief that

---

[6] https://www.uscourts.gov/sites/default/files/document/fcms_na_distcomparison0630.2025.pdf.

[7] *Id.*

[8] *Id.*

[9] *Id.*

would regulate Defendants' operations nationwide. But the parties agreed that Texas is the proper forum for such disputes. If this Court were to adjudicate the preliminary-injunction motion and then transfer, the transferee court would be forced either to revisit, or to shoulder, this Court's rulings—precisely the type of duplication and inefficiency that *Atlantic Marine* cautions against. *See* 571 U.S. at 66 n.8 (warning against "unnecessary inconvenience and expense to parties, witnesses, and the public").

For these reasons, the Court should resolve Defendants' transfer motion first. Only if the case remains in California should the Court consider Plaintiff's request for injunctive relief. Deferring that request until after the threshold transfer issue is decided would conserve judicial resources, respect the parties' contractual choice of forum, and ensure consistent adjudication going forward.

## CONCLUSION

The X TOS designate Texas as the exclusive forum for the disputes presented here, and, under *Atlantic Marine*, that clause deserves to be enforced absent extraordinary circumstances that do not exist here. In addition, even if the forum-selection clause did not apply, the discretionary factors under 28 U.S.C. § 1404(a) independently point to Texas as the proper venue. Therefore, the Court should transfer this case to the U.S. District Court for the Northern District of Texas.

Dated: September 25, 2025

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: */s/ Derek L. Shaffer*
Derek L. Shaffer
Shon Morgan
Dylan C. Bonfigli

*Attorneys for Defendants X Corp. and xAI Corp.*